## Bache et al. *v.* Philips et al., Appellants.

*Bill of lading—Transfer of title—Set-off.*

Where a bill of lading is attached to a draft as security for its payment, and transferred for a valuable consideration, it is an appropriation of the property contained in the bill.

Enthoven sold to defendants three hundred tons of steel wire rod. At the same time he drew a bill of exchange on defendants, but payable

" in case of need " at plaintiffs'. Attached to the bill of exchange was the bill of lading of the rods. Defendants refused to pay the bill of exchange, and it was paid by plaintiffs. Defendants refused to accept the rods, but subsequently purchased them from plaintiffs at a price less than they had agreed to pay Enthoven. *Held,* in an action to recover the price of the rods, that defendants could not set off against plaintiffs' claim a debt due to defendants by Enthoven.

Argued Jan. 18, 1893. Appeal, No. 102, July T., 1892, by defendants, Ferdinand Philips et al., trading as Philips, Townsend & Co., from judgment of C. P. No. 3, Phila. Co., Dec. T., 1890, No. 860, on report of referee in favor of plaintiffs, Jules S. Bache et al., trading as Cahn & Co. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Assumpsit for goods sold and delivered.

The case was referred to Mayer Sulzberger, Esq., as referee, who reported as follows:

" The plaintiffs instituted an action of assumpsit against the defendants, and by their statement therein filed claimed to recover from the defendants the sum of $3,968.99, with interest from August 28, 1890. The defendants filed an affidavit of defence, wherein they set out in substance that the plaintiffs never sold or delivered to them any rods, but that the rods which they supposed the plaintiffs to claim for were bought by them from Henry Enthoven, to whom they paid $9,387.88, and retained out of the purchase money $3,968.99, due to the defendants by the said Enthoven by way of set-off growing out of his failure previously to perform a contract with the defendants. There were no further pleadings in the case.

" History of the case: Prior to July, 1890, Henry Enthoven was a broker or dealer in London, and the defendants were manufacturers in Philadelphia. On various occasions they bought from Enthoven steel wire rods in large quantities. On January 3, 1890, Henry Enthoven being in Philadelphia, he, by his brokers, E. R. Mann & Co., sold to the defendants fifteen hundred tons basic steel wire rods, No. 5, B. W. G., at 182 shillings per ton of twenty-two hundred and forty pounds, C. I. F. Philadelphia. Settlement by four months banker's credit on London bankers, without interest, available against shipping

documents. Shipment at the rate of about three hundred tons
per month, commencing late in January or early in February.
Accidents at works or other delays beyond control of sellers
excepted. Sellers not to be required to replace shipments lost
at sea.

" In accordance with the terms of this contract, the defendants
supplied a letter of credit to Mr. Enthoven, issued by Drexel
& Co. on Messrs. J. S. Morgan & Co., of London, at four months'
sight, for any sum or sums not exceeding in all £14,000 sterling.
Drafts to be drawn in London on or before June 15, 1890, for
the cost of wire rods as per margin to be exported to an Atlan-
tic port in the United States, and advice thereof to be given to
Messrs. J. S. Morgan & Co. The advice to be accompanied by
certified invoices ; policies of insurance, and consul's certificates,
bills of lading to our order, one copy to be sent us direct by
vessel. We hereby agree with the drawers, indorsers, and bona
fide holders of bills drawn under and in compliance with the
terms of this credit, that the same shall be duly honored upon
presentation at the counting house of Messrs. J. S. Morgan &
Co. in London.

" Under these arrangements Enthoven sent to the defendants,
prior to June, 1890, about eleven hundred tons of wire rods.
The last lot of three hundred tons was shipped by a steamer
sailing June 25th. Drafts for the payment of all previous
shipments had been presented by Enthoven to J. S. Morgan &
Co., of London, accompanied by the shipping documents, and
had been duly honored. The draft accompanying the last ship-
ment of three hundred tons was, however, refused by J. S.
Morgan & Co., on the ground that the credit had expired on
June 15th.

" On June 28, 1890, Enthoven wrote and mailed by the
steamer 'Servia' the following letter :

" ' 60 Fenchurch street,

" ' LONDON, E. C., 28th June, 1890.
" ' MESSRS. PHILIPS, TOWNSEND & Co., Philadelphia.

" ' Dear Sirs : Enclosed please find invoice for the last 300
tons Steel Wire Rods, shipped per Belgenland a Philadelphia,
amounting to £2730.

" ' In consequence of the letter of credit relating to the con-
tract of which the above named 300 tons is the completion, hav-

ing expired on the 15th inst. and your refusal to extend same, I have placed the documents through my bankers to be delivered to you against your acceptance of my sight draft for the amount of my invoice less 4 months interest at 5 per cent. In the event of your failing to lift the document legal proceedings will immediately be taken against you which please note.

" ' The refusal of Mess. Morgan & Co. to accept my draft has nothing whatever to do with your refusal to take the goods as Mess. Drexel & Co. authorized me through Mess. Morgan & Co. to erase the word " Early," in the contract, thereby giving me full power to ship at any time during the month which I have done. The last shipment being made on the 21st inst. I have fulfilled my part of the contract and look to you to fulfill yours.

" ' As soon as you send me the custom house weight certificate, I will send you a check for the amount you claim.'

" The defendants refused to accept the draft when it was presented with the necessary documents, including bill of lading, attached. The draft was as follows :

" ' $13,182.20
" ' LONDON, 20th June, 1890.          £2,684.10

" ' ' At sight pay to my order the sum of two thousand six hundred and eighty-four pounds, ten shillings British sterling, against documents of 300 tons wire rods per Belgenland a Philadelphia. Exchange as per endorsement.

" ' HENRY ENTHOVEN.'

" Seal of The Anglo-Foreign Banking Company Limited.

" ' Messrs. Philips, Townsend & Co. Philadelphia.

" ' In case of need at Messrs. Cahn & Co. New York.'

" Indorsed as follows : ' Pay the Anglo Foreign Banking Co. Ld. or order Value of K. & F. London, 26 June, '90, at the exchange of forty-eight and seven-eighths pence per dollar. Henry Enthoven.

" ' Pay to Messrs. Ladenburg Thalmann & Co. or order p. p. The Anglo Foreign Banking Co. Limited.     J. Houstath, p. Manager.

" ' Pay to the order of Philadelphia Nat'l Bank, for collection and credit.

" ' The Philadelphia Nat'l Bank, J. H. Torrey, Cas.     Receiv-

ed payment, p. p. Ladenburg Thalmann & Co.    Rothstatt, Cash.'

" The circumstances under which the plaintiffs became the owners of the bill of exchange in question were the following:

" Jules S. Bache, one of the firm plaintiffs, was personally acquainted with Henry Enthoven, of London.   On or about July 4th or 5th, 1890, he received two letters from Mr. Enthoven; one a personal letter, and the other a letter addressed to his firm.   The letter addressed to the firm purported to give an account of Enthoven's relations with Philips, Townsend & Co., the defendants, and implied in substance that, in view of the possible or probable refusal of Philips, Townsend & Co., to pay the bill of exchange, he had taken the liberty to insert on the bill of exchange the following words : ' In case of need payable at Messrs. Cahn & Co.,' and closed as follows : ' Should Philips, Townsend & Company fail to do the needful I hereby request you to take the delivery of the goods, sell them at the best possible price obtainable, and draw upon me for the difference of the realization and the amount of my draft, at the same time placing the matter in the hands of your lawyer for him to sue the consignee for breach of contract and all expenses and damages.'

" In pursuance of the request contained in the said letter, the plaintiffs, on July 11, 1890, paid the draft to Ladenburg, Thalmann & Co., the bankers in whose possession it was, with the bill of lading, etc.   Being unfamiliar with the business of dealing in steel wire rods, which were the goods shipped, the plaintiffs inquired concerning the standing of Philips, Townsend & Co., upon whom the bill of exchange was drawn, and ascertained that they were a reputable firm.   Thereupon, on July 12th, 1890, they addressed to the defendants a letter, in which they asked the defendants to accept delivery of the goods, and after examination thereof to make settlement for the same : ' It being understood, however, that the title to the goods shall remain in Henry Enthoven until we have received payment therefor.   As the goods will come under general order at 11 A. M., Monday next, we must ask your prompt action in this matter, and would request you if necessary to communicate with us over our private wire, which runs to the office of Messrs. Gerlach & Harjes, No. 437 Chestnut street, your city.'

" In this letter there were inclosed the bill of exchange, copy of which has been heretofore given, the bill of lading, and all papers in connection with the case.  On the back of the bill of exchange were the words : ' Received payment, Ladenburg, Thalmann & Company.'

" On July 15, 1890, Philips, Townsend & Co. replied to this letter.  They refused to accept the rods, stated their reasons for the refusal, and returned the draft, bill of lading and other documents.

" In the meantime Cahn & Co. communicated with Messrs. Walbaum &. Co., metal brokers, of Philadelphia, as follows :

" ' We have paid draft, so make account sale direct to us. Read our Saturday's letter to Philips, Townsend, and keep us advised.'  To which, on the same day, Walbaum replied by telegraph to Cahn & Co. as follows : ' Philips, Townsend & Co. positively refuse to take the rods.  They are now going into store.  Will confirm this by letter.'

" Cahn & Co. on the same day telegraphed to Walbaum : ' Do the best you can with the stuff.  We don't know how to handle it.'

" On July 16th Walbaum reported an offer from Philips, Townsend & Co. for the rods at $44.50, ex shipping duty paid. Customhouse weight to decide quantity ; cash, thirty days. This offer Cahn & Co. cabled to Enthoven, and, pending the answer, requested Walbaum to keep it open until the next day.

" On July 16, 1890, Philips, Townsend & Co. wrote to Cahn & Co. reiterating that the rods were not in accordance with the contract, and informing Cahn & Co. that they had been requested to make an offer for the rods, which they had done. The sale was finally made to Philips, Townsend & Co. on the terms of the offer, and on receipt of the customhouse weights, July 28, 1890, Walbaum sent Philips, Townsend & Co. a bill for the rods, amounting in all to $13,356.97.

" On August 28th, when the account fell due, Philips, Townsend & Co. sent to Walbaum their check for $9,387.98, accompanied by a letter, wherein they claimed that Enthoven owed them for over draft £123, 19s., $604.25 ; and for damages in consequence of the inferiority of rods previously sent, $3,364.74; total, $3,968.99 ; which last amount, being claimed as a credit, was deducted from the bill.

" The real question to be determined is, therefore, whether the defendants had the right to deduct $3,968.99 from the amount of the bill.

" The defendants base their contention that they have this right upon the theory that the rods were the property of Henry Enthoven, against whom they had a claim of that amount, that in purchasing them from Walbaum through E. R. Mann & Co. they supposed that they were dealing with Enthoven, and that they did not know and had no ground to believe that the plaintiffs had any interest in the transaction. This involves the determination of the following points : (1) Had the defendants a claim against Henry Enthoven, and, if so, what was the amount thereof ? (2) Who owned the rods at the time of the sale ? (3) From whom did the defendants buy them ?

" I. As to the first point: On this point we have no evidence for the plaintiffs. For the defendants we have the evidence of Mr. Ferdinand Philips, one of the defendants themselves, and of Mr. Austin Murray, a foreman in the employ of the defendants."

After stating the evidence, the master found as a fact " that six hundred tons of rods delivered by Henry Enthoven to the defendants were inferior in quality to the rods contracted for, and that the amount of this inferiority was two dollars and sixty cents per ton, or $156. There was not sufficient evidence to sustain the defendants' claim for £123 19s.

" II. Who owned the rods at the time of the sale ? The referee finds that Henry Enthoven was the owner of the three hundred tons of rods at the time of the sale thereof to Philips, Townsend & Co., but that the plaintiffs had a special property in them by reason of having paid the draft, with the bill of lading and other documents.

" III. From whom did the defendants buy the three hundred tons ? As Cahn & Co. had acquired a special property in the three hundred tons of rods, and as they ordered Walbaum to sell the rods, informing Walbaum that they had paid the draft, and directing him to account to them, the referee finds as a fact that Cahn & Co. were the sellers of the three hundred tons of rods to the defendants. He further finds as a fact that prior to the purchase of the three hundred tons of rods from Walbaum, through E. R. Mann & Co., the defendants had notice

that the draft was paid by Cahn & Co. It is true that the defendant Philips had no recollection of seeing the indorsement showing the payment of the draft when the same was sent to his firm by the plaintiffs. But as a business man it was his duty to note that fact, which was thus plainly put before him, if he ever after intended to make a point of the matter. The referee fails to see the evidence upon which the defendants can rightfully claim that they believed they were dealing with Henry Enthoven exclusively. Mr. Walbaum was the plaintiffs' broker. He asked E. R. Mann to assist him in the sale. Mann, therefore, had no right to make any representation as to the ownership of the rods through this mere agency to sell for Walbaum; nor is it at all clear that he made any such representation. It is true that he says he thought the rods were Enthoven's, as, indeed, in one aspect they were; but the referee finds that nothing was said or done which authorized the defendants to come to the conclusion that Cahn & Co. were not selling these rods as the pledgees thereof. He therefore finds as a fact that the defendants bought the three hundred tons of rods from Cahn & Co., the plaintiffs.

" Findings of facts restated: (1) Of the eleven hundred tons of rods shipped by Enthoven to the defendants prior to the transaction which is the subject of this case, six hundred were inferior in quality to the amount of two dollars and sixty cents a ton, or $1,560 in all. (2) Henry Enthoven was the owner of the three hundred tons of rods at the time of the sale thereof to Philips, Townsend & Co., but the plaintiffs had a special property in them by reason of having paid the draft with the bill of lading and other documents. (3) The defendants bought the three hundred tons of rods from Cahn & Co., the plaintiffs.

" Points of law: The referee rules as follows: Where a bill of lading is attached to a draft as security for its payment, and transferred for a valuable consideration, it is an appropriation of the property contained in the bill. This is the rule as laid down by our Supreme Court in the case of Holmes, Lafferty & Company v. The German Security Bank, 87 Pa. 525, and followed in Holmes v. Bailey, 92 Pa. 57. The circumstances in the case of Holmes v. The Bank were so similar to those of the present case that a brief summary of them may be useful. J.

M. Harper, of Louisville, Kentucky, had been shipping car loads of live stock to Holmes, Lafferty & Co. of Pittsburgh, to be sold on commission, and making drafts on them as soon as shipped, based on the bills of lading which accompanied the drafts. These drafts were usually discounted by the German Security Bank, and were always promptly paid, until the draft for a certain car load of hogs shipped on August 9, 1877, by Harper to Holmes, Lafferty & Co., came due. On the day of shipment Harper drew his draft on the latter firm for $1,300, and the said draft was discounted by the German Security Bank on the faith of the bill of lading which was handed over to it. The draft, with the bill of lading attached, was sent to the German National Bank of Pittsburgh for collection, and was presented to Holmes, Lafferty & Co. on August the 11th, and payment refused. The hogs arrived on the 13th, were received by the defendants below, and by them sold. At that time Harper was indebted to defendant on overdrafts on previous shipments to a larger amount than the proceeds of this last lot. The proceeds of the shipment after deducting freight, shipment charges, etc., amounted to $1,299, which is the amount the bank claimed in their suit. The defendants claimed to retain it on account of the indebtedness of Harper to them. Verdict and judgment for the bank, which was affirmed by the Supreme Court. This decision, in the opinion of the referee, conforms to the general commercial law laid down by the highest courts of various states, and the general principles of which are well stated in the case of Dows v. The National Exchange Bank of Milwaukee, 91 U. S. 618."

The referee awarded in favor of plaintiffs.

Exceptions dismissed, and judgment for plaintiffs. Defendants appealed.

*Errors assigned* were in dismissal of exceptions, quoting them.

*John G. Johnson*, for appellants.—Surrender of possession without announcing the lien, and without throwing any duty upon the vendees to recognize it, terminated all rights which the lien gave.

*James W. M. Newlin*, for appellee, cited: Stewart v. Rich-

ardson, 2. Yeates, 89 ; Kintzing v. McElrath, 5 Pa. 467 ; Hershey v. Keembotz, 6 Pa. 128; Butler's Appeal, 26 Pa. 63 ; Holmes v. Bailey, 92 Pa. 57 ; Holmes v. German Security Co., 87 Pa. 525 ; Dows v. Bank, 91 U. S. 618.

PER CURIAM, January 30, 1893 :
A careful examination of this case has convinced us that the learned referee was right in his conclusions. We affirm the judgment for the reasons given by him.
Judgment affirmed.